IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONNA J. THOMAS, ADMINISTRATRIX OF THE ESTATE OF ANDRE THOMAS, DECEASED, ON BEHALF OF THE ESTATE OF ANDRE THOMAS, | ) ) ) ) ) |
| Plaintiff | ) Civil Action No. 09-996 ) |
| V. | ) Judge Nora Barry Fischer ) |
| BOROUGH OF SWISSVALE, DEBRA LYNN INDOVINA-AKERLY, JUSTIN LEE KEENAN and GARY DICKSON, | ) ) **JURY TRIAL DEMANDED** ) ) |
| Defendants | ) |

**PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DEBORAH MASH, PH.D. AND ANY EVIDENCE REGARDING AN ALLEGED CONDITION REFERRED TO AS EITHER EXCITED DELIRIUM, AGITATED DELIRIUM AND/OR DRUG-INDUCED DELIRIUM**

COMES NOW, Plaintiff Donna J. Thomas, Administratrix, through her counsel, Jon Pushinsky, Esquire, and Howard F. Messer, Esquire, and moves this court, pursuant to Fed.R.Evid. 702 and *Daubert v. Merrill Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), for an Order precluding Deborah Mash, Ph.D., from testifying as an expert at the trial in this matter and excluding evidence that might be proffered to establish that Andre Thomas suffered from excited/agitated delirium or drug-induced delirium and/or whether those conditions played a role in Mr. Thomas' death. The following matters are brought to the court's attention in support of this Motion:

1. This case arises out of the death of Andre Thomas at the hands of Swissvale Borough police officers on the night of August 4, 2008.

2. At the time of his death, Mr. Thomas, who was not under arrest and who had committed no crime, had been tased multiple times and beaten by the individual Defendants.

3. An autopsy performed by the Allegheny County Medical Examiner's Office did not immediately result in a determination of Mr. Thomas' cause of death.

4. Prior to determining a cause of death, the Medical Examiner sent brain tissue samples to the University of Miami's Miller School of Medicine for examination and testing by Deborah Mash, Ph.D.

5. Dr. Mash advocates the recognition of agitated delirium[1] and drug-induced delirium as diagnoses explaining the cause of death for many people who die while in police custody.

6. Simply stated, and of particular relevance to the instant case, Dr. Mash believes that agitated delirium and drug-induced delirium can be identified through examinations and measurements of both heat shock proteins and dopamine transporter sites in the brain (Mash 16-17).[2]

7. Following his receipt and review of the conclusions appearing in the report regarding Mr. Thomas' brain samples that was prepared by Dr. Mash, Abdulrezak Shakir, M.D., who performed the Thomas autopsy for the Medical Examiner's Office, determined Mr. Thomas'

---

[1] Excited delirium is also referred to as agitated delirium and the two terms are used interchangeably herein.

[2] Relevant deposition transcript excerpts are being submitted as Exhibits to this Motion. Dr. Mash's deposition transcript excerpts are contained in Exhibit 1. Citations to a deposition transcript in the Motion are in the form of the deponent's name, together with relevant transcript page numbers.

cause of death to be "agitated delirium as a result of acute cocaine intoxication"[3] (Shakir 25, 28-29).[4]

8. The Medical Examiner's Office issued a final death certificate listing "Agitated Delirium" as the first "IMMEDIATE CAUSE."

9. Dr. Shakir would not have listed agitated delirium as the cause of Mr. Thomas' death but for Dr. Mash's report (Shakir 29-30).

10. Dr. Shakir made his final cause of death determination after conferring with and obtaining the authorization of Karl Williams, M.D., the Allegheny County Medical Examiner (Shakir 11-12).

11. Agitated delirium is not a specific medical diagnosis (Williams 9, Mash 27) and is not a condition with a universally accepted definition (Williams 11-12).[5] There is a great deal of controversy surrounding agitated delirium (Shakir 12), which both the American Medical Association and American Psychiatric Association decline to recognize as a legitimate diagnosis (Wecht 40).

12. According to Cyril H. Wecht, M.D., J.D., the existence of agitated delirium has not and cannot be proven scientifically (Wecht 43).

13. Defendants have identified Drs. Shakir, Williams and Mash as witnesses who might be called upon to present evidence on behalf of the defense during the trial of this matter.

---

[3] The term "acute" in this context refers to a recent ingestion of cocaine and not the quantity of cocaine ingested (Shakir at 25).

[4] Dr. Shakir's deposition transcript excerpts are contained in Exhibit 2.

[5] Dr. Williams' deposition transcript excerpts are contained in Exhibit 3.

The only arguably pertinent subjects of which they might have knowledge are agitated delirium, drug-induced delirium and Mr. Thomas' cause of death. In order to provide testimony about these subjects, one must have specialized and/or scientific knowledge.

14. The admissibility of expert testimony and scientific evidence is governed by the standards set forth in case law and the Federal Rules of Evidence.

15. Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

16. Rule 702 has been interpreted as imposing three substantive criteria for assessing the admissibility of expert testimony and scientific evidence: the proffered witness must be an 'expert' (*i.e.,* possess relevant knowledge, skill, training, or education); (2) the expert must testify about matters requiring scientific, technical, or specialized knowledge; and (3) the expert's testimony must assist the trier of fact. *Pineda v. Ford Motor Co.,* 520 F.3d 237, 244 (3d Cir.2008).

17. The district court's focus, when deciding a challenge to the presentation of expert testimony/scientific evidence, is often directed to "the methodology of the expert in order to 'satisfy itself that 'good grounds' exist for the expert's opinion.'" *Pritchard v. Dow Agro Sciences,* 705 F.Supp.2d 471, 476 (W.D. Pa. 2010); *quoting U.S. v. Mitchell,* 365 F.3d 215, 244

(3d Cir. 2004). In other words, the expert's opinion must have "been arrived at in a scientifically sound and methodologically reliable fashion." *Pritchard,* 705 F.Supp. at 476. The goal of the methodology inquiry is "to exclude so-called 'junk science' and ensure that expert testimony is based on sound methods and valid procedures." *Lillis v. Lehigh Valley Hospital Corp.,* 1999 WL 718231 at *6 (E.D. Pa. 1999).

18. Dr. Mash is not a physician and is not qualified to render medical diagnoses (Williams 14, Mash 6-7).

19. Dr. Williams, the County Medical Examiner and an identified defense witness, denies that Dr. Mash is an expert on excited delirium: "I would not characterize Dr. Mash as an expert in excited delirium" (Williams 15).

20. Furthermore the methodology employed by Dr. Mash in determining the presence of agitated delirium or drug-induced delirium from an analysis of brain tissue samples fails generally accepted standards regarding scientific proof. Dr. Mash, herself, describes her work as an "emerging science," not an accepted one (Mash 15).

21. Dr. Mash's test results have not been confirmed and her procedures have not been replicated by any independent researcher, as she holds the only collection of postmortem specimens from putative cases of agitated delirium (Mash 8).

22. Dr. Mash acknowledges that her protocol for determining agitated delirium from an examination of heat shock proteins is not accepted as a diagnostic tool (Mash 27).

23. One reason Dr. Mash's methodology is not accepted as a diagnostic tool is that she lacks a sufficiently large enough statistical sample from which the scientific community could legitimately accept her conclusions (Mash 28-30).[6]

24. According to Dr. Williams, Allegheny County's Medical Examiner, there are no tests for excited delirium and he has not heard of a heat shock protein analysis used by anyone other than Dr. Mash in connection with her agitated delirium work (Williams 24-25). Dr. Williams raises additional questions regarding Dr. Mash's dopamine transporter analysis on the basis that no one else is looking for a connection between these and agitated delirium (Williams 23).

25. Dr. Shakir, who relied upon Dr. Mash's report in arriving at the Thomas cause of death, can only guess at the meaning of Dr. Mash's findings (Shakir 41-44).

26. In light of the above, a cause of death attributable to agitated delirium or drug-induced delirium is not supported by accepted and reliable methods and tests. Consequently, testimony or other evidence regarding these matters is neither reliable nor a proper fit with the case. *See, Schneider ex rel. Estate of Schneider v. Fried,* 320 F.3d 396, 404 (3d Cir.2003).

27. The testimony of Dr. Mash and evidence of agitated/drug-induced delirium must therefore be excluded as not comporting with the requirements of either the Federal Rules of Evidence or applicable decisional law.

---

[6] Dr. Mash has based her findings on 90 patients. She recognizes that "thousands" are needed in order to legitimate her work (Mash 30-31).

WHEREFORE, Plaintiff requests that an Order be entered precluding Defendants from presenting any testimony by Dr. Mash or report authored by or on behalf of her at trial.  Plaintiff further requests that Defendants be barred from presenting evidence at trial to the effect that agitated/drug-induced delirium caused the death of Andre Thomas.

Respectfully submitted:

S/ Jon Pushinsky
JON PUSHINSKY
PA I.D. #30434
1808 Law & Finance Building
Pittsburgh, PA 15219
(412) 281-6800

HOWARD F. MESSER
Pa. I.D. No. 10023
100 Ross Street, Suite 101
Pittsburgh, PA 15219
(412) 281-7200

Lawyers for Plaintiff